IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JENNIFER L. FRY                                                                                    PLAINTIFF

        v.                                          Civil No. 12-2163

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                          DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jennifer Fry, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her applications for DIB and SSI on January 20, 2010, alleging an onset date of May 29, 2007[1], due to disk problems in her back, migraine headaches, pulmonary embolism, carpal tunnel syndrome, anxiety, and depression. Tr. 106-112, 113-117, 147, 153-154, 176-178, 192, 203. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr.  An administrative hearing was held on November 17, 2010. Tr. 21-48. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 27 years old and possessed a ninth grade education and certification as a nurse aid. Tr. 25, 27. She had past relevant work "(PRW)" experience as a certified nurse aide and a light industrial worker in a recycling plant. Tr. 27, 149, 156-175.

On February 15, 2011, the ALJ found Plaintiff's back disorder with chronic lower back pain, carpal tunnel syndrome ("CTS"), migraines, and anxiety/depression to be severe, but concluded they did

---

[1]Records indicate that Plaintiff had filed a prior application for benefits, receiving an unfavorable decision on September 22, 2008. Tr. 142. Therefore, it was recommended that her onset date be September 23, 2008. Tr. 142.

not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 13-15. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to

> lift and carry twenty pounds occasionally and ten pounds frequently, sit for about six hours during an eight-hour workday, and stand and walk for about six hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but she cannot climb ladders, ropes, and scaffolds. She can perform no rapid and repetitive flexion and extension of her wrists. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. She can respond appropriately to supervisors, co-workers, the general public, and usual work situations.

Tr. 15. The ALJ then concluded that Plaintiff could perform work as cashier II, fast food worker, and sale attendant clerk. Tr. 19-20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 6, 2012. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 6, 9.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

3

**III.    Discussion:**

Plaintiff contends that the ALJ erred by failing to properly develop the record with regard to Plaintiff's RFC, failing to consider evidence that fairly detracted from his findings, failing to conduct a proper credibility analysis, failing to give treating source opinions the proper weight, concluding Plaintiff could perform a range of light work, and determining Plaintiff could still work.

**A.    Develop Record:**

In her first point of error, Plaintiff contends that the ALJ failed to fully and properly develop the record. We note that the ALJ does owe a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo*, 377 F.3d at 806 (citing *Snead*, 360 F.3d at 839).

Plaintiff alleges that the ALJ should have recontacted Dr. Dunaway for clarification of his reasoning and/or other criteria in assigning the limitations and restrictions he chose in his assessment. However, we find that the record contained sufficient evidence upon which the ALJ could make an informed decision without recontacting Dr. Dunaway. *See Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). In reviewing Dr. Dunaway's assessments, we note that they are in stark contrast to his treatment notes. It appears that Plaintiff began seeing Dr. Dunaway in 2008. He treated her for back and neck pain, sinusitis, bronchitis, headaches, and depression/anxiety. Initially, Dr. Dunaway prescribed medications such as Hydrocodone and Norco to treat her pain, but in 2010, he tapered her off of Norco and prescribed Mobic, which is an nonsteroidal anti-inflammatory, and Tramadol, which is a narcotic-

4

like pain reliever. He also prescribed Topamax as a migraine preventative and Xanax for her anxiety. Records reveal Plaintiff's own self reports that she was doing "well" or "ok" at many of her visits. Tr. 599, 601, 603. In fact, Dr. Dunaway only documented symptoms of depression/anxiety on two occasions and made no notations of any physical or mental limitations. Tr. 598, 637. And, Plaintiff testified that the Tramadol kept her headaches "at bay." Tr. 30.

In May 2010, Dr. Dunaway completed both physical and mental RFC assessments. Tr. 646-651, 653-658. Basically, he concluded that Plaintiff's degenerative disk disease, history of pulmonary embolism, depression, and carpal tunnel syndrome limited her to lifting and carrying no more than 10 pounds; sitting, standing, and walking for a total of two hours each per eight hour workday; occasional use of the neck to look down, up, or side to side or held in a static position; occasional twisting and stooping; and no climbing ladders. Further, he indicated that she would need to walk around for 15 minutes every hour; would necessitate a sit/stand at will option allowing for unscheduled breaks every two hours; and, would miss more than four days of work per month. Mentally, Dr. Dunaway found her unable to meet competitive standards with regard to performing at a consistent pace without an unreasonable number and length of rest periods, responding to changes in routine work setting, dealing with normal work stress, dealing with the stress of semiskilled and skilled work, and using public transportation. He also opined that she was seriously limited but not precluded with regard to maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; and, traveling in unfamiliar places. Dr. Dunaway then went further to state that she would be moderately restricted with regard to activities of daily living, and would have marked difficulties in maintaining social functioning and concentration, persistence or pace. Further, he noted four or more repeated episodes of decompensation. However, as noted above, his own treatment notes simply do not support such a strict RFC. In fact, none of the medical evidence in the record

5

supports his RFC. And, we note that a lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability, as "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Accordingly, Plaintiff's first point of error is overruled.

### B.     Evidence:

Next, Plaintiff contends that the ALJ failed to properly consider all of the evidence that distracted from his opinion. Specifically, she questions his treatment of the evidence relating to her alleged fatigue, medication side effects (fogginess), migraine headaches, and lower than average intellectual quotient ("IQ"). To determine whether substantial evidence support the ALJ's decision, we must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). But, we are not permitted to reverse simply because substantial evidence also exists that would support a contrary outcome or because we would have decided the case differently. *Id*.

Here, we can find no evidence to indicate that Plaintiff sought out specific treatment for fatigue. As previously noted, she was treated for a history of pulmonary embolism, headaches, back and neck pain, insomnia, and depression/anxiety. We do not doubt that Plaintiff's impairments resulted in a certain degree of daytime fatigue, however much like the standard used to evaluate pain, it is not whether Plaintiff experiences fatigue that is of concern, rather it is whether that fatigue is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work). In the present case, Plaintiff remained capable of taking care of three young children (two of which were under school age --five and one) on a daily basis and performing household chores. We note no complaints of fatigue or drowsiness in any of her treatment notes. And,

AO72A
(Rev. 8/82)

Plaintiff testified that she typically gets at least six or seven hours of sleep per night when she takes her medication as prescribed. Tr. 31. Thus, given the lack of evidence to support her allegations of disabling fatigue, we can not say the ALJ erred in finding it to be a non-severe impairment.

We also note that Plaintiff did not allege any medication side effects until the administrative hearing. Her medical records reveal no reports or complaints of side effects, and Dr. Dunaway indicated that her medications did not make her drowsy. Tr. 653. Further, Dr. Shry found no significant mental limitations, negating the possibility that her medications impacted her mental abilities. Likewise, he found no evidence of memory loss or problems with concentration or pace.

As for Plaintiff's lower than average IQ, we note that this was merely an estimated IQ. No formal tests were administered to make a definitive determination of her true IQ. However, even assuming that she does function within the low to low average IQ range, we also note Dr. Shry's findings that Plaintiff would be able to communicate and interact in a socially adequate, intelligible, and effective manner, comprehend and carry out simple or complex tasks, cope with the typical demands of basic work-like tasks, attend to and sustain concentration on tasks, sustain persistence when completing tasks, and complete work-like tasks within acceptable time frames. And, Plaintiff admitted that she follows directions well, gets along with authority figures, and handles stress and change in routine "pretty good with medicine." Tr. 184. We find that this supports the ALJ conclusion that Plaintiff can understand, remember, and carry out simple, routine, and repetitive tasks and respond appropriately to supervisors, co-workers, the general public, and usual work situations.

    **C.**    **Credibility Analysis:**

Plaintiff's next argument concerns the ALJ's determination that her subjective complaints were not totally credible. The ALJ was required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitation and aggravating factors; 4) dosage,

7

AO72A
(Rev. 8/82)

effectiveness, and side effects of medication; and, 5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

In reviewing the ALJ's decision and the medical evidence of record, the undersigned can find no error in the ALJ"s credibility analysis. Although he may not have specifically mentioned or methodically analyzed *Polaski*, a review of his opinion makes clear the reasons for his assessment. First, Plaintiff admitted to Dr. Frye that she had quit most of her jobs in order to stay home with her children. Tr. 607. *Medhaug v. Astrue*, 578 F.3d 805, 816–817 (8th Cir. 2009) (holding fact that claimant left job for reasons other than his or her medical condition is a proper consideration in assessing credibility). In fact, Plaintiff reported bathing, cooking, dressing, and playing with her children. Tr. 178. And, reports dating back to 2006 suggest that some of Plaintiff's back pain might have been related to poor back hygiene mechanics in lifting and holding her young children. Tr. 235.

We can also find no evidence to indicate that Plaintiff is precluded from performing any daily activities. On an adult function report dated February 2, 2010, Plaintiff indicated that she could care for her personal hygiene, prepare meals, do laundry, vacuum, wash dishes (with some reported difficulty standing for extended periods of time), go outside daily, drive a car, ride in a car, go out alone, shop in stores for groceries once or twice per week, pay bills, count change, handle a savings account, use a checkbook/money orders, read, watch television, play with her children, and hangout with and talk to others on the weekends. Tr. 178-185. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72

8

F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

The objective medical evidence is also scant, revealing almost no evidence of physical functional limitations. Plaintiff claims to suffer from spinal arthritis, but there does not appear to be an objective finding supporting this claim. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). She was diagnosed with degenerative disk disease with examinations revealing some range of motion deficits, tenderness, and muscle spasm in the neck and back. Tr. 597, 598, 638, 660. An MRI also revealed a small central disk protrusion at the L4-5 level. Tr. 277. However, her doctor remarked that this was a rather minimal finding. Tr. 225. *Id*. And, although it legitimized her use of narcotic pain medication, it did not warrant the dosage of pain medication she appeared to be using. Tr. 225.

The records indicate that Plaintiff overused her narcotic pain medication, often asking for early refills and stating that her medication had been stolen or lost. Tr. 227, 228, 229, 230, 231, 232, 234, 235, 266. Due to her recent trips to the ER, at least one doctor labeled her as drug seeking. Tr. 460. *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (drug-seeking behavior further discredits allegations of disabling pain). At one point, she was said to have been receiving pain medication from at least three separate doctors. Tr. 232.

The fact that she became pregnant in 2009, delivering a baby in August 2009, further calls into question the level of pain she was experiencing, as carrying a baby to term typically exacerbates existing back pain. The records do not, however, indicate that her back pain increased during the months of her pregnancy. And, following her pregnancy, Dr. Dunaway tapered her off of the narcotic pain relievers and prescribed Tramadol and Flextra in their stead.

The record also makes clear that Plaintiff suffered from some form of headaches. Her treating doctors have questioned the true nature of these headaches (tension vs. migraine). Tr. 226. However, she has been prescribed both medications to prevent migraines as well as medications to treat migraines. Plaintiff testified that the Tramadol keeps her headaches "at bay." Tr. 30. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

Although Plaintiff contends that she suffers from carpal tunnel syndrome, there is no apparent objective evidence that this results in limitations. *See Forte*, 377 F.3d at 895. Relevant medical records reveal neither treatment for nor a diagnosis of CTS. And, Plaintiff testified that her CTS only "sometimes' bothers her, but "not too much." Tr. 36. Nevertheless, it appears that the ALJ accepted some of Plaintiff's subjective complaints incorporating limitations concerning repetitive flexion and extension of the wrists into his RFC determination.

Further, we note that Plaintiff did suffer from a pulmonary embolism for which she was placed on Coumadin therapy until approximately three months prior to the administrative hearing. It is noted that she was not always complaint with her Coumadin therapy.[2] Tr. 225. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (holding that "[a] failure to follow a recommended course of treatment . . . weighs against a claimant's credibility." (citation omitted)). And, medical records reveal periodic monitoring of her international normalized ratio ("INR") to ensure therapeutic levels, but no additional problems with blood clots. As such, we can not say that this condition would have an impact on her ability to perform work-related activities.

---

[2]Plaintiff contends that her non-compliance was due to her inability to afford the medications prescribed. However, the ALJ correctly noted that her failure to seek out treatment and medication assistance from medical clinics offering low cost or indigent medical treatment and medication weighed against her credibility. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost or no cost medical treatment for alleged pain and disability).

As for her mental impairments, records reveal that Plaintiff did not seek out any professional mental health treatment, outpatient or inpatient, during the relevant time period. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). She was diagnosed with depression and anxiety by her family doctor and prescribed medication, but she did not participate in any formal treatment for her condition. In October 2007, Dr. Jacobs noted that Plaintiff was able to take care of her children and maintain her home life with her anxiety level and that he had only prescribed Clonazepam on an as needed basis. Tr. 231. He further explained that he did not allow her to have a lot of it, but felt it would keep her out of the ER with minor complaints. Later on, it appears that she was prescribed Xanax, but was advised that her refills must be at least 28 days apart. Tr. 226. It appears that she was also prescribed Trazodone to treat her depression and insomnia. At the time of the hearing, Trazodone was the only medication she could reportedly afford to purchase.[3] We note, however, that in February 2010, Plaintiff reported no difficulty getting along with others or authority figures, handling stress, or handling changes in routine. Tr. 184. And, in spite of her allegations concerning her ability to concentrate, she denied any difficulty following directions (both written and oral) and reported the ability to watch television, pay bills, handle a savings account, and read; all activities requiring concentration and focus. Tr. 178-185. Further, Plaintiff indicated that she could pay attention as long as needed, and always finished what she started. Tr. 183. Dr. Shry's 2010 evaluation also failed to reveal any mental limitations that would preclude her from employment. Tr. 606-608.

---

[3] And, as previously noted, Plaintiff did not seek out medical treatment or medication assistance through clinic offering low cost or indigent medical services.

11

For the aforementioned reasons, we find substantial evidence to support the ALJ's credibility determination in this case. Contrary to Plaintiff's argument, the inconsistencies were sufficient to allow the ALJ to conclude that Plaintiff's subjective complaints were not totally credible.

### D.     Treating Source Opinions:

In her fourth point of error, Plaintiff disputes the ALJ's treatment of Dr. Dunaway's physical and mental RFC assessments. She alleges that the ALJ improperly weighed Dr. Dunaway's statements. Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). If a treating opinion is deemed not controlling, the ALJ uses six enumerated factors to determine its appropriate weight. See 20 C.F.R. § 404.1527(d)(2 -6). The factors are: (1) length of the treatment relationship; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See id.* The supportability factor provides that "[t]he better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(d)(3).

For the reasons enumerated in Section A, above, we find that the ALJ was correct in his treatment of Dr. Dunaway's assessments. His assessments simply are not supported by the overall evidence of the record, and are contradicted by his own treatment notes. Accordingly, Plaintiff's fourth point of error is overruled.

E.     **RFC**:

Plaintiff also opposes the ALJ's RFC assessment, contending that does not take into account all of her impairments. Specifically, she posits that it does not adequately account for her persistent fatigue, headaches, inability to follow simple instructions, anxiety, depression, chronic pain, and the side effects of her medication. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

As noted in previous sections, the evidence does reveal that Plaintiff suffered from headaches, head and neck pain, sleep disturbance, depression, and anxiety. It does not, however, indicate that she was unable to follow simple instructions, or that she was experiencing side effects from her medications. Dr. Shry conducted a mental evaluation of Plaintiff in March 2010. Tr. 606-608. After diagnosing her with adjustment reaction and depression, he concluded that she could communicate and interact in a socially, intelligible, and effective manner; comprehend and carry out simple or complex tasks; cope with

13

the typical demands of basic work-like tasks; attend and sustain concentration on tasks; sustain persistence when completing tasks; and, complete work-like tasks within acceptable time frames. We can find no evidence to contradict this assessment, aside from Dr. Duanway's unsupported assessment which we have already discussed.

As for Plaintiff's headaches and back and neck pain, we can find no evidence to indicate that these impairments rendered her incapable of performing a range of light work. As previously discussed, her own reports of her daily activities undermine her complaints of disabling pain, as does her history of apparent drug seeking behavior. Plaintiff has indicated that Tramadol keeps her headaches "at bay," and her back and neck pain has apparently improved as she is no longer taking narcotic pain medications. Therefore, while we do not doubt that she suffers from a degree of pain, we find no evidence to support her contention that the pain is disabling. Accordingly, the undersigned finds substantial evidence to support the ALJ's determination that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, sit for about six hours during an eight-hour workday, stand and walk for about six hours during an eight-hour workday; and, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Further, the evidence also supports his conclusion that she cannot climb ladders, ropes, and scaffolds or perform rapid and repetitive flexion and extension of her wrists. And, for the reasons enumerated in the sections above, we also find substantial evidence to support the ALJ's mental RFC assessment.

### F.  Vocational Expert Testimony:

Plaintiff also contends that the ALJ was not permitted to rely on the testimony of the vocational expert to identify jobs still available to the Plaintiff because the hypothetical question posed to the expert did not contain all of Plaintiff's limitations. "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005) (quoting *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004)). "The

hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole." However, it does not need to include those impairments that the ALJ does not find credible. *Grissom*, 416 F.3d at 837 (mental conditions, if supported by the record, must be considered by VE); *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

After reviewing the evidence, the undersigned is of the opinion that the ALJ included all of the Plaintiff's impairments in the hypothetical question posed to the vocational expert. The expert then testified that an individual with Plaintiff's RFC could perform work as a as cashier II, fast food worker, and sale attendant clerk. We find that the ALJ was entitled to rely on the expert's testimony concerning the existence of jobs in the national economy that Plaintiff could still perform. And, the expert's testimony constitutes substantial evidence to support the ALJ's determination that Plaintiff was not disabled.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus recommends that the decision be affirmed, and Plaintiff's Complaint be dismissed with prejudice. The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this <u>8th</u> day of May 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

15

AO72A
(Rev. 8/82)